**MARQUEZ et al., Plaintiffs,**

v.

**CASA ESPAÑA EN PUERTO RICO, et al., Defendants.**

Civil No. 13–1251 (GAG).

United States District Court, D. Puerto Rico.

Signed April 30, 2015.

Juan R. Davila–Diaz, for Plaintiffs.

Jose A. Andreu–Fuentes; Margarita Cintron–Solla; Nelson N. Cordova–Morales, for Defendants.

### MEMORANDUM ORDER

GUSTAVO A. GELPÍ, District Judge.

In advance of the upcoming trial, Defendants filed a request to conduct a jury view of the premises in question where Plaintiff fell. (Docket No. 73.) They argue that an on-site jury view is necessary because it "will allow each Juror, as the ultimate trier of facts, to obtain an unblemished and more clear picture of the location and characteristics of the precise area where the fall purportedly occurred, and be better equipped to accurately assess the dangerousness of the step and the foreseeability of the incident." *Id.* at 2. Plaintiffs object to Defendants' request for a jury view as untimely given that the deadline for *in limine* motions and other matters elapsed on February 27, 2015, and because a jury view would waste the court's resources as this is a simple case. (Docket No. 75.) In addition, Plaintiffs challenge Defendants' motion arguing that "visiting the premises as they stand today will confuse the jury" because "the premises have been changed to correct the scenario pointing towards negligence." (Docket No. 75 at 1.)

Defendants, in response to Plaintiffs' opposition, claim that Plaintiffs' bald assertion that the premises have been changed, though convenient, is false and constitutes a misrepresentation to the court. (Docket

No. 76–1 at 1.) Defendants aver that the premises remain unaltered and, more specifically, "that no change has been made to the colors between floor levels, the lighting, or possible obstructions in front of the step in controversy." *Id.* at 2. Finally, Defendants reiterate that a jury view will indeed provide the jurors with a "pure picture" of the scene and the actual features of the area, which will assist them in assessing the dangerousness of the step and foreseeability of the incident. *Id.* at 2. Subsequently, Plaintiffs issued a sur-reply contesting Defendants' allegations that Plaintiffs were providing false statements. (Docket No. 79–1.) Plaintiffs allege that the area at issue was indeed altered because at the time of the accident only one sign was present and, as of today, there are three signs providing a warning of the supposed dangerous condition of the step. *Id.* As such, Plaintiffs echo that conducting a jury view of the premises will only confuse the jury. *Id.*

■ "[A] federal court, exercising its inherent powers, may allow a jury in either a civil or a criminal case to view places or objects outside the courtroom." *Clemente v. Carnicon–Puerto Rico Management Assocs.*, 52 F.3d 383, 385 (1st Cir.1995). The decision to permit a jury view is "entrusted to the sound discretion of the trial court." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir.1997); *see United States v. Pettiford*, 962 F.2d 74, 76 (1st Cir.1992). A court generally acts within that discretion in denying a motion for a view when there is sufficient evidence describing the scene in the form of testimony, diagrams, or photographs. *Crochiere*, 129 F.3d at 236; *see Pettiford*, 962 F.2d at 76. In making this determination, the court may consider such factors as "the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene." *Crochiere*, 129 F.3d at 236; *see Pettiford*, 962 F.2d at 76. In other words, the court must ascertain whether "the [jury] view would ... have presented any clearer view of the evidence than was achieved through the use of photographs [testimony, etc.] at trial...." *Pettiford*, 962 F.2d at 76.

■ Additional considerations may be: (1) the importance of the evidence to be obtained and the circumstances of the case on trial; (2) whether it is reasonably certain that the view will substantially aid the jury in reaching a correct verdict; (3) whether the jury could visualize the scene from the testimony, photographs and other documentary evidence submitted; and (4) whether the conditions of the scene since the time of the event are sufficiently the same at the time of trial to make a jury view helpful. *See Rooney v. Sprague Energy Corp.*, 495 F.Supp.2d 135, 137 (D.Me. 2007).

■ Applying these factors, the court does not believe that a jury view is warranted here. Defendants' proffered reasons for a jury view lay out in a generic and perfunctory manner that an on-site inspection of the area where the incident occurred will assist the jury, as the ultimate trier of fact, to obtain a "clear picture" of the location and characteristics of the area. (Docket No. 73.) Nevertheless, Defendants fail to persuasively explain why the inspection is necessary vis-à-vis other means of conveying the area to assist the jury in a meaningful to determine the facts. Defendants did not address why the substantial equivalent of a jury view cannot be obtained through other, less onerous means, such as the presentation of a videotape of the area, photographs, computer generated images, diagrams, maps,

and testimony. *See Rooney*, 495 F.Supp.2d at 137.

Moreover, the request does not arise out of a discovery dispute where Defendants attest that the evidence to be introduced will not provide a clear understanding of the area where the fall occurred. The court is thus not convinced that alternative methods at Defendants' disposal like introducing photos or videos of the area at issue, if carefully prepared, could not present this evidence at least as effectively as an on-site jury view. *See id.* Defendants are not arguing that videotapes, photographs and/or diagrams could not do adequate justice to the layout and spacial arrangements of the scene. *See Pettiford*, 962 F.2d at 76 (upholding denial of view where view would not have provided clearer portrayal of scene than photographs did). *Crochiere*, 129 F.3d at 236. Such visual evidence, in conjunction with the parties' expected testimonies and cross-examination regarding the existence or lack thereof of a dangerous condition in the step of the Casa España premises where the fall took place should be sufficient to inform the jury on the facts at issue. *See Esposito v. SDB Investments, Inc.*, 873 F.Supp.2d 418, 420 (D.N.H.2012).

Further, the logistics of transportation, security, traffic, and miscellaneous delays would likely cause a significant delay in the court proceedings. *See Crochiere*, 129 F.3d at 236. Even if the premises are relatively close to the courthouse, and even if the view took an hour, a jury view would entail activating the Marshal Services to accompany and take the jury and the undersigned to the premises, which would mean that a substantial portion of one full day of trial testimony and cross-examina-tions would most likely be compromised. The jury's time is sacred, at least to the undersigned.

Last, and most importantly, in objecting to the jury view, Plaintiffs allege that the present appearance of the area where Plaintiff fell has changed and now appears different to when the fall occurred. Allegedly, signs have been added to the area in controversy, presumably warning the existence of a step.[1] These changes arguably affect the foreseeability analysis (dangerousness of the step) and touch on the negligence in failing to warn the existence of the step. These purported changes in the scene can potentially confuse or mislead the jury about the appearance of the area on the day of the fall. As such, a jury view of the premises in a condition other than that of its condition at the time of the incident serves no purpose in describing or "painting" a picture of the scene to assist the jury in determining what the truth is. This alone provides sufficient grounds to deny Defendants' motion. *See Esposito*, 873 F.Supp.2d at 420; *Boucher v. CVS/Pharmacy, Inc.*, 822 F.Supp.2d 98, 102–103 (D.N.H.2011) (excluding photographs of the scene where plaintiff fell because photographs "depict[ed] materially different conditions than those that existed on the day of the incident," thereby creating "a substantial risk that the jury would become confused in thinking that those pictures represented the [scene] on the day [plaintiff] fell").

The court believes that, in this context, a view of the scene is not justified, not only because it would be an unnecessary use of time and court resources, but because it would be potentially confusing and misleading to the jury as the scene has alleg-

---

1. The alleged changes or alterations made in the area at issue constitute subsequent remedial measures which are ordinarily inadmissible under Federal Rule of Evidence 407. There appears to be no clear way to visit the scene of the fall without allowing the jury to observe these changes. *See Esposito*, 873 F.Supp.2d at 420.

edly been altered. More so, as discussed, Defendants have not sufficiently pleaded why they cannot successfully describe the scene "as it was" through document evidence such as videos or photographs and testimony. *See Crochiere*, 129 F.3d at 235. Absent a showing of just cause by Defendants, the court is hesitant to allow what appears to be an attempt to take a second bite at the evidentiary apple.

In sum, the disadvantages of lost trial time, additional expense, logistics, and potential legal pitfalls such as misleading or confusing the jury substantially outweigh whatever slight incremental advantage, if any, an on-site jury view would have over the presentation of alternative evidence. *See Rooney*, 495 F.Supp.2d at 138. In view of the trial court's inherent power and informed discretion to decide whether to allow a view at all,[2] for the reasons set forth above, Defendants' motion for a jury view of the scene is **DENIED.**

**SO ORDERED.**

---

**2.** *See Clemente*, 52 F.3d at 386; *United States* v. *Gray*, 199 F.3d 547, 550 (1st Cir.1999).